Linda Kaye SAMONS, Administratrix
of the Estate of Kenneth R.
Crum, Appellant

v.

KENTUCKY FARM BUREAU
MUTUAL INSURANCE
COMPANY, Appellee.

No. 2011–SC–000414–DG.

Supreme Court of Kentucky.

May 23, 2013.

Nathaniel Leslie Collins, Counsel for
Appellant.

Deborah R. Lewis, Hazard, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Kenneth Crum, while riding horseback along a narrow and winding stretch of mountain road in Floyd County, Kentucky, was struck and severely injured by a vehicle driven by Raymond K. Ousley. At the time, Ousley was test-driving the vehicle, a disused, uninsured Ford Escort titled to Rhonda Ward. Crum sued Ousley for personal injuries and later joined Ousley's auto liability insurer, Kentucky Farm Bureau, for no-fault benefits. Kentucky Farm Bureau settled Crum's liability claim against Ousley, paying its policy limits of $25,000. The circuit court entered a final order declaring coverage for Crum,[1] ordering Kentucky Farm Bureau also to pay him the no-fault benefits. The Court of Appeals reversed, holding that Kentucky law did not allow Crum to recover and Ousley's policy excluded Crum.

We granted discretionary review to consider an issue that has evaded review to this point and is capable of repetition. That is, whether a pedestrian struck by an uninsured vehicle being driven by an insured driver can recover no-fault benefits from the driver's insurance company. Because we conclude that the applicable statutory and policy language is clear and the public policy on this point is strong, we must reverse the decision of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The facts of this case are undisputed. Crum was riding horseback along Route 3381 in Floyd County. Crum was living in

North Carolina at the time and had no personal automobile insurance. Crum was struck by a motor vehicle driven by Ousley but owned by Rhonda Ward. Ousley was test-driving the vehicle with Ward's fiancé, John Reed, riding along as a passenger. Ward did not carry any insurance on the car, but Ousley had informed Ward and Reed that he was covered by two insurance policies. The policy important in this matter was policy number 4248070, furnished by Kentucky Farm Bureau, listing Ousley as the named insured and identifying a 1989 Grand Marquis as the insured vehicle. This policy, among other coverages, provided $10,000 for Personal Injury Protection (PIP).

Crum filed a tort action against Ousley seeking damages for the injuries he suffered in the motor vehicle accident. Nearly a year after filing the suit, Crum joined Kentucky Farm Bureau as a defendant and filed an amended complaint, alleging, among other claims, a right to basic reparation benefits (BRBs). Kentucky Farm Bureau denied that it was required to provide Crum with BRBs under the Kentucky Motor Vehicle Reparations Act (MVRA) and the language of the policy issued to Ousley. The trial court, upon Kentucky Farm Bureau's motion, agreed to bifurcate the tort claim from the coverage issue. The trial court then entered summary judgment on the amount of liability coverage, limiting it to $25,000 from a single policy. Crum and Kentucky Farm Bureau later settled the negligence claims against Ousley for $25,000.

Later, the trial court declared by final order that Kentucky Farm Bureau was also required to pay BRBs to Crum for the motor vehicle accident. The trial court

---

1. Crum died during the pendency of the litigation; and Linda Kaye Samons, the personal representative of Crum's estate, revived the action below. For clarity, we will refer to the appellant as Crum in this opinion.

ruled that the MVRA's policy of compulsory insurance required that Kentucky Farm Bureau pay BRBs to Crum, and the policy issued by Kentucky Farm Bureau did indeed cover Crum because it covered Ousley for the use of any motor vehicle and any pedestrian struck by a motor vehicle Ousley drove. Additionally, the trial court found that any policy exclusion would be invalid under the MVRA and the doctrine of reasonable expectations.

Kentucky Farm Bureau appealed to the Court of Appeals, which reversed the trial court's final order declaring coverage, holding that the MVRA compelled the opposite conclusion. Relying on the plain language of the MVRA, the Court of Appeals panel held that because there was no insurance on the vehicle, Crum was not entitled to BRBs from Kentucky Farm Bureau but, instead, could seek them under the Assigned Claims Plan. Further, the Court of Appeals found that Ousley's policy excluded Crum from coverage for BRBs. In the opinion of the Court of Appeals, the trial court misread the policy and instead of covering any pedestrian struck by any motor vehicle, the policy actually only covered a pedestrian struck by a motor vehicle other than the vehicle under the policy if the pedestrian was an "insured." And Crum was not an "insured" under the policy.

We granted Crum's motion for discretionary review to advance Kentucky jurisprudence in the area of no-fault law. We now reverse the Court of Appeals. And because we hold that Crum was entitled to receive BRBs from Kentucky Farm Bureau, we do not reach the merits of the exclusion found by the Court of Appeals in Ousley's policy.

## II. ANALYSIS.

■ Because these facts are undisputed, this case comes to us on appeal of a final order declaring coverage by the trial court, closely akin to a summary judgment. On appeal of summary judgment, our standard of review is "whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law." [2] In this case, neither party has asserted any issue with the underlying facts; but both parties take issue with the legal conclusions reached by the courts below based on those undisputed facts. Accordingly, we are faced with only questions of law and statutory interpretation. We review the underlying legal conclusions presented in the trial court's final order declaring coverage and the opinion of the Court of Appeals de novo.[3]

In 1974, the General Assembly brought about sweeping changes in the realm of automobile insurance with its enactment of the Kentucky Motor Vehicle Reparations Act, based largely on the Uniform Motor Vehicle Accident Reparations Act (UMVARA).[4] In doing so, the General Assembly transformed Kentucky into a no-fault state. This transformation reflected a policy "for prompt and liberal recovery to accident victims without regard to fault." [5] The implementation of this policy was performed primarily through KRS 304.39–030, basic reparation benefits; KRS 304.39–

---

2. *Inter–Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012).

3. *Id.*

4. *See* Kentucky Revised Statutes (KRS) 304.39–010 to 304.39–350.

5. Robert P. Moore & David W. Rutledge, Note, *Kentucky No–Fault: An Analysis and Interpretation*, 65 Ky. L.J. 466, 473–74 (1976–77).

060, limitation of tort rights; and KRS 304.39–090, required insurance coverage.[6]

■ *Basic reparation benefits,* often labeled Personal Injury Protection (PIP) in insurance policies,[7] are "benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle."[8] All "owners, registrants and operators of motor vehicles in the Commonwealth" are statutorily mandated to carry coverage for BRBs.[9] So when an accident occurs in Kentucky, as did the one here, "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits,"[10] with the only exclusion being if the individual has rejected his tort rights under KRS 304.39–060(4). This Court has previously noted the strong public policy in Kentucky protecting BRBs, labeling them "untouchable."[11]

The focus of this case is the *source* of BRBs coverage for an injury stemming from a motor vehicle accident. KRS 304.39–050(1) states that the "basic reparation insurance applicable to bodily injury . . . is the security covering the vehicle occupied by the injured person at the time of the accident." And if "the injured person is a pedestrian, the security covering the vehicle which struck such pedestrian"

is responsible for payment of BRBs.[12] But "[i]f there is no security covering the vehicle, any contract of basic reparation insurance under which the injured person is a basic reparation insured shall apply."[13] As a last resort, the injured person may recover under the assigned claims plan if, for example, "[b]asic reparation insurance is not applicable to the injury" or "[b]asic reparation insurance applicable to the injury cannot be identified."[14] Here, we are faced with an uninsured pedestrian[15] being struck by a vehicle uninsured by its owner but operated by an insured driver. This unique set of circumstances presents this Court with the novel issue of whether a pedestrian can recover BRBs under the driver's insurance when the vehicle that strikes him is uninsured.

Crum urges us to focus on the overall policy of the MVRA, specific language of the applicable statutes, and the case law dealing with relatively similar situations. Simply put, Crum's argument is that Ousley was required by statute to have insurance, which he did, and this insurance covered the uninsured car he was driving. And it is required by statute that an insurance policy include coverage for BRBs. As a result, the car was covered by security (policy provided by Kentucky Farm Bureau) and Crum, as a pedestrian, has a statutory right to recover BRBs from Ken-

---

6. *Id.*

7. Courts have long-held that it is acceptable to use BRBs and PIP interchangeably. *See, e.g., Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Group,* 15 S.W.3d 720, 723 (Ky.1999) ("Although the correct terminology is, of course, 'basic reparation benefits,' that terminology has been used interchangeably with 'personal injury protection' (PIP) benefits when describing what are generally known as 'no-fault' benefits under Kentucky law.").

8. KRS 304.39–020(2).

9. KRS 304.39–010(1).

10. KRS 304.39–030(1).

11. *See Bishop v. Allstate Ins. Co.,* 623 S.W.2d 865, 866 (Ky.1981).

12. KRS 304.39–050(1).

13. KRS 304.39–050(2).

14. KRS 304.39–160.

15. KRS 304.39–050(1) ("A [*pedestrian* ], as used herein, means any person who is not making 'use of a motor vehicle' at the time his injury occurs.").

tucky Farm Bureau. Further, according to Crum, the policy exclusion found by the Court of Appeals is invalid as it frustrates the purpose of the MVRA.

Illustrative of the difficult nature of this case, Kentucky Farm Bureau relies on the same menu of sources, asking us to apply the plain language of the applicable statutes, the case law, and Ousley's policy. Essentially, Kentucky Farm Bureau argues that the applicable statutes require a pedestrian to recover from the insured vehicle; and the vehicle that struck Crum was not insured because there was no policy that listed this vehicle on its declarations page. According to Kentucky Farm Bureau, Ousley's policy covered only the vehicle listed, a 1989 Grand Marquis. As a result, Kentucky Farm Bureau argues that it is not obligated to pay Crum BRBs but that Crum can seek BRBs through the assigned claims plan.

■ When engaging in statutory interpretation, it is imperative that we give the words of the statute their literal meaning and effectuate the intent of the legislature.[16] We have repeatedly stated that we "must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy."[17] And the intent of the General Assembly "shall be effectuated, even at the expense of the letter of the law."[18] With these principles in mind, we agree with Crum and hold that he is entitled to receive BRBs from Kentucky Farm Bureau under Ousley's policy.

■ It is clear that BRBs are to be first sought from the security covering the vehicle. What is less clear, however, is what constitutes security covering the vehicle. *Security covering the vehicle* is defined in KRS 304.39–080(1) as "the insurance or other security so provided." The Kentucky Court of Appeals has previously held—and the United States Sixth Circuit Court of Appeals has ratified—that when a vehicle is not insured by its owner, the insurance coverage of its operator may provide the statutorily-required minimum coverage.[19] We hold this principle applicable to the present case so that the purposes of the MVRA, in protecting injured parties and assuring them quick payments, may be furthered.

■ The MVRA mandates "every owner or *operator* of a motor vehicle registered in this Commonwealth or *operated in this Commonwealth with an owner's permission* shall continuously provide ... security for the payment of basic reparation benefits ... and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle."[20] Kentucky Farm Bureau urges this Court to read the MVRA as putting the onus wholly on owners of vehicles to have insurance, not on operators. We understand Kentucky Farm Bureau's position but find it tenable only through the use of selective reading. Again, when engaging in statutory interpretation, one word or sentence is not determinative. We must read the whole Act in harmony. Simply because the own-

**16.** *See Cosby v. Commonwealth,* 147 S.W.3d 56, 59 (Ky.2004).

**17.** *Id.*

**18.** *Commonwealth v. Rosenfield Bros. & Co.,* 118 Ky. 374, 80 S.W. 1178, 1180 (1904).

**19.** *Commonwealth Fire & Cas. Ins. Co. v. Manis,* 549 S.W.2d 303 (Ky.App.1977). *See*

*also Roy v. State Farm Mutual Ins. Co.,* 954 F.2d 392, 394–96 (6th Cir.1992). We acknowledge that *Manis* dealt with uninsured motorist coverage (UM) required under KRS 304.20–020 but see little reason to refuse to apply the principle to the case at hand.

**20.** KRS 304.39–080(5) (emphasis added).

er of a motor vehicle has a legal responsibility to acquire insurance for his motor vehicle does not mean that, for the purposes of victim reparation, a vehicle cannot be insured if its owner is uninsured. "It is not a logical necessity that a vehicle be treated as 'uninsured,' from the standpoint of an accident victim, if the insurance company by which the victim will be paid pursuant to the company's indemnification responsibility happens to have promised to indemnify the driver and not the owner." [21] The language of the MVRA is clear: owners *and* operators must have insurance.

Here, Ousley had an insurance policy that provided the statutory minimum of liability, BRBs, and uninsured motorist coverage. That policy explicitly stated that liability coverage would be extended to Ousley for his "covered auto" (1989 Grand Marquis) and "any auto" other than his "covered auto." There was "security on the vehicle" because Kentucky Farm Bureau was obligated to provide payment for any accident arising out of Ousley's use of the vehicle. Further in the policy, and more importantly for this case, the policy states that it provides PIP benefits to an "insured" who sustains "bodily injury" caused by an accident involving the use of a motor vehicle. Particularly, for these circumstances, an "insured" is "any other person" while a "pedestrian" struck by the "covered auto." The "covered auto" includes any car for which liability coverage is provided—we have already determined liability coverage extended to the car that struck Crum—and any car for which the "named insured" (Ousley) "is required by the Kentucky Motor Vehicle Reparations Act to maintain security." As previously

noted, as an owner of a motor vehicle and as an operator of a motor vehicle, Ousley was compelled by statute to maintain insurance for any accident that may arise. He did that here. And Crum should be allowed to recover.

■ The MVRA is remedial legislation and should be interpreted broadly. Today, we simply apply the language of the statute in light of the explicit purpose of the Act to reach a sensible conclusion. The circumstances presented in this case are highly unique, and we should note that this holding should be read to apply to the facts before us. We also mention that this holding may increase the number of reparation obligors available to a pedestrian because they may recover from the driver or the owner of the vehicle, assuming they each have insurance. This is not materially different from a pedestrian who is struck by more than one vehicle and has a "right to claim up to $10,000 in BRBs from any *one* reparation obligor which issued insurance on any of those motor vehicles." [22] If the number of available reparation obligors is increased, a pedestrian may still only recover from one.[23] Based upon the statutes, we see no reason to foreclose an uninsured pedestrian's ability to recover BRBs from an insured driver operating a vehicle uninsured by its owner.

## III. CONCLUSION.

For the foregoing reasons, we reverse the holding of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Before the Court of Appeals, Kentucky Farm Bureau raised the issue of standing and suggested that Crum may

**21.** *Roy*, 954 F.2d at 396.

**22.** *Capital Enterprise Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co.*, 804 S.W.2d 377, 378–79 (Ky.App.1991) (emphasis added).

**23.** KRS 304.39–050(3) states that "[n]o person shall recover basic reparation benefits from more than one (1) reparation obligor as a result of the same accident."

have already recovered BRBs from the Assigned Claims Plan. This issue was not ruled upon by the Court of Appeals and was not adequately briefed to this Court. On remand, the trial court should determine if, and to what extent, Crum has recovered BRBs from the Assigned Claims Plan in order to ensure compliance with KRS 304.39–050(3), which only allows recovery from one reparations obligor.

All sitting.   All concur.