RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1449-MR

ERIE INSURANCE EXCHANGE                                    APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM FLOYD CIRCUIT COURT<br>HONORABLE JOHNNY RAY HARRIS, JUDGE<br>ACTION NO. 19-CI-00059 |

MEGAN JOHNSON AND TERRI
REED                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND MCNEILL, JUDGES.

DIXON, JUDGE: Erie Insurance Exchange ("Erie") appeals from the following orders entered by the Floyd Circuit Court: order denying Erie's motion for summary judgment; order altering and amending the previous order; order concerning attorney's fees, all entered August 22, 2019; and finally, from a September 20, 2019, order awarding attorney's fees. Following a careful review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On October 14, 2018, Megan Johnson and Terri Reed (collectively Appellees) were involved in an automobile accident. At the time of the accident, Johnson was driving, and Reed was a passenger in Johnson's vehicle, which was insured by Erie. The insurance policy covering the vehicle included personal injury protection (PIP) coverage. Appellees sought treatment from multiple medical care providers for injuries sustained during the accident. On October 23, 2018, counsel for Appellees sent a letter to Erie requesting PIP benefits be reserved until further directed. On January 16, 2019, counsel requested Erie use PIP funds to pay one of the medical care providers for treatment of Appellees. Erie refused, claiming it was required to pay medical bills in the order received and it had received medical bills from other providers predating treatment with the provider for whom Appellees requested payment. Erie's position is documented in a letter from its counsel dated January 18, 2019. Counsel for Appellees responded to Erie's letter on the same day, explicitly directing Erie to pay medical bills for the chosen provider only—Hackney and Hensley Chiropractic—and threatening suit if this was not accomplished within ten days.

On January 25, 2019, Erie filed a complaint for declaratory relief and notice of intent to file interpleader. Erie requested the trial court settle the dispute between it and counsel for Appellees concerning the interpretation of Kentucky

law governing how PIP benefits are to be paid, as well as clarify whether it is responsible for the attorney's fees of Appellees. On February 15, 2019, Appellees filed their answer and counterclaim, the first count of which alleged they are entitled to increased interest and attorney's fees since Erie was without reasonable foundation for refusing to pay their medical provider as directed. The second count appears to attempt to aver claims of fraud and breach of fiduciary duty.

On April 11, 2019, Erie moved the trial court for interpleader and for leave to deposit money in the court, as well as for summary judgment. On May 7, 2019, Appellees also moved the trial court for summary judgment. On June 4, 2019, the trial court denied Erie's motion for summary judgment and found Erie responsible for all of Appellees' medical bills "immediately" upon entry of its order. Erie timely moved the trial court to reconsider or, in the alternative, alter, amend, or vacate its order. While that motion was pending, Appellees renewed their motion for summary judgment, and a stipulation of partial voluntary dismissal—concerning count two of their counterclaim—was entered. On August 22, 2019, the trial court entered an order altering and amending its order of June 4, 2019, striking the language regarding immediate payment. On the same date, the trial court also entered an order stating it would award attorney's fees. Appellees moved the trial court for approval of their attorney's fees, and on September 20, 2019, the trial court awarded attorney's fees of $14,383. This appeal followed.

# STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Serv's, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

Unless otherwise directed by statute, the amount of an award of attorney's fees is within the trial court's discretion. *King v. Grecco*, 111 S.W.3d 877, 883 (Ky. App. 2002), *superseded by statute on other grounds as stated in Meece v. Feldman Lumber Co.*, 290 S.W.3d 631 (Ky. 2009). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted). "When a trial

---

[1] Kentucky Rules of Civil Procedure.

court is considering whether to award attorney fees and costs and/or how much to award, the trial court's decision should be guided by the purpose and the intent of providing an award of attorney fees and costs[.]" *Alexander v. S & M Motors, Inc.*, 28 S.W.3d 303, 305 (Ky. 2000).

## ANALYSIS

In Kentucky, automobile accidents are governed by the Motor Vehicle Reparations Act (MVRA).[2] On appeal, Erie argues the MVRA requires PIP carriers to pay PIP losses as they accrue on a first-in/first-out basis. Unfortunately, there is no published case law on this exact issue. Nevertheless, we need not look beyond the MVRA itself to resolve this dispute. We first note:

> When engaging in statutory interpretation, it is imperative that we give the words of the statute their literal meaning and effectuate the intent of the legislature. We have repeatedly stated that we "must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." And the intent of the General Assembly "shall be effectuated, even at the expense of the letter of the law."

*Samons v. Kentucky Farm Bureau Mut. Ins. Co.*, 399 S.W.3d 425, 429 (Ky. 2013) (footnotes omitted).

---

[2] Kentucky Revised Statutes (KRS) 304.39-010, *et seq*.

Insurance carriers are required to pay basic reparation benefits, including PIP benefits, as losses accrue. Concerning this duty, KRS 304.39-210(1) provides:

> Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation. Notwithstanding any provision of this chapter to the contrary, ***benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss.*** If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates.

(Emphasis added.) The MVRA defines a "loss" as an "accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss." KRS 304.39-020(5). In the case herein, the only type—or "element"—of loss Appellees have experienced or claimed is that of medical expenses.

-6-

Erie argues KRS 304.39-210 requires that it pay the medical care providers as the loss accrued and medical expenses were incurred. However, Erie was notified in writing that Appellees reserved the right to direct payment of their PIP benefits, which effectively suspends and trumps how benefits would otherwise be payable and prevents them from being overdue until after such direction is made. *Id.*

This is not the only time the MVRA discusses an insured's right to direct payment of benefits. KRS 304.39-241 states:

> An insured may direct the payment of benefits among the different elements of loss, if the direction is provided in writing to the reparation obligor. ***A reparation obligor <u>shall</u> honor the written direction of benefits provided by an insured on a prospective basis.*** The insured may also explicitly direct the payment of benefits for related medical expenses already paid arising from a covered loss to reimburse:
>
> > (1) A health benefit plan as defined by KRS 304.17A-005(22);
> >
> > (2) A limited health service benefit plan as defined by KRS 304.17C-010;
> >
> > (3) Medicaid;
> >
> > (4) Medicare; or
> >
> > (5) A Medicare supplement provider.

(Emphasis added.)

Erie focuses on the phrases "directing the payment of benefits among the different elements of loss" and "direct the payment of benefits among the different elements of loss" and homes in on the word "among," contending an insured may not direct payments *within* an element of loss. KRS 304.39-210, KRS 304.39-241. In support of this argument, Erie cites to an opinion by the Supreme Court of Kentucky, which held:

> The new statutory provision, KRS 304.39-241, allows the insured to direct the payment of his or her benefits among the different elements of loss if the direction is provided, in writing, to the reparation obligor. With this change in the law, the legislature recognized that it is a more efficient, economical, and equitable system to keep the provider out of the reparations process and afford the insured the control of how his or her benefits are paid because there is only a certain amount of money available for payment. If each and every medical provider obtained an assignment—as a matter of course—of any right to benefits under the MVRA, the insured's benefits could be exhausted after an accident, leaving the insured no ability to decide at a later date that he or she would be better served by directing reparation benefits to cover some other element of loss, such as economic loss.

*Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mut. Ins. Co.*, 250 S.W.3d 321, 327 (Ky. 2008). While that court did not discuss an insured's ability to direct payments within an element of loss, we disagree with Erie's position that this case supports its view that an insured may only direct payment of benefits among elements of loss and not within one or more of those elements. However, contrary

-8-

to Erie's contention, we interpret the court's observation that it was the legislature's intent to "afford the insured the control of how his or her benefits are paid because there is only a certain amount of money available for payment" to support Appellees' interpretation of the MVRA that an insured may direct payment of benefits not only among but also within each element of loss. We believe this conclusion is supported by *Neurodiagnostics'* reference to the purposes behind the MVRA, which are:

> (1) providing prompt payment to victims of motor vehicle accidents; (2) encouraging "prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation"; (3) reducing "the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities[,] and uncertainties of the liability system"; and (4) helping "guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical[,] and equitable system of motor vehicle accident reparations[.]"

*Id.* at 325-26 (footnotes omitted). We agree with the trial court that Appellees' interpretation of the MVRA comports with these purposes while Erie's interpretation simply does not.

Erie further contends *Medlin v. Progressive Direct Ins. Co.*, 419 S.W.3d 60 (Ky. App. 2013), supports its position herein. However, that case concerned whether the MVRA requires insurers to pay PIP benefits directly to the

insured.  In *Medlin*, another panel of our court held the only requirements set forth in the MVRA are for an insurer to either reimburse the insured for money spent out of pocket or to pay the medical care providers directly.  In the case herein, the insureds requested the insurer pay their provider directly, as required by the MVRA and discussed in *Medlin*.

The *Medlin* court did not address the issue of whether insurers are required to pay medical care providers on a first-come/first-serve basis in cases, such as these, where medical expenses comprise the only element of loss.  To the extent Erie insinuates the converse is true, it has taken the *Medlin* opinion out of context and stretched the MVRA well beyond the legislature's intent.  For example, it is clear the MVRA and *Medlin* would allow an insured to pay a claim-related medical bill and then receive reimbursement from the insurer.  Had Appellees paid Hackney and Hensley Chiropractic out of pocket—and no other provider—and then submitted a request for reimbursement to Erie, it would be obligated to reimburse that payment even though Appellees had incurred, but not yet paid, other medical bills for services received prior to their treatment with Hackney and Hensley Chiropractic.  This thwarts Erie's arguments and effectively allows insureds to direct payments within the element of loss.

After Erie's motion for summary judgment was denied and the trial court found it responsible for Appellees' medical bills, they sought and were

-10-

awarded increased interest and attorney's fees pursuant to KRS 304.39-210 and

KRS 304.39-220. KRS 304.39-210(2) states: "Overdue payments bear interest at

the rate of twelve percent (12%) per annum, except that if delay was without

reasonable foundation the rate of interest shall be eighteen percent (18%) per

annum." KRS 304.39-220 provides:

> (1) If overdue benefits are recovered in an action against the reparation obligor or paid by the reparation obligor after receipt of notice of the attorney's representation, a reasonable attorney's fee for advising and representing a claimant on a claim or in an action for basic or added reparation benefits may be awarded by the court if the denial or delay was without reasonable foundation. No part of the fee for representing the claimant in connection with these benefits is a charge against benefits otherwise due the claimant.

> (2) In any action brought against the insured by the reparation obligor, the court may award the insured's attorney a reasonable attorney's fee for defending the action.

Erie challenges the trial court's awards of increased interest and attorney's fees

under these provisions, claiming it had a reasonable foundation for not issuing

payment.

In both KRS 304.39-210 and KRS 304.39-220, the legislature clearly

contemplated awarding attorney's fees where denial or delay of payment is without

reasonable foundation. Here, the trial court found, "it is ***beyond reason*** that the

legislature would permit the victim of a motor vehicle accident to direct the

-11-

payment of his/her medical bills, yet not permit he/she to choose to whom payment should be made." (Emphasis added.) We agree. Even so, Erie contends the parties' opposing positions regarding an insured's ability to direct payment within an element of loss constitutes a justiciable controversy and further serves as its reasonable foundation for refusing to pay PIP benefits to the provider as the insureds directed. For the reasons discussed herein, we disagree.

Erie compares this case to *Automobile Club Insurance Company v. Lainhart*, 609 S.W.2d 692 (Ky. App. 1980), in which the Court held, "It is our opinion that the assertion of a legitimate and bona fide defense by the reparation obligor constitutes reasonable foundation for delay under KRS 304.39-210 and KRS 304.39-220, and this is not changed by the fact that the case is ultimately decided against the obligor." *Id.* at 695. However, *Lainhart* is distinguishable from the case herein because in that case no proof of loss was presented to the insurer until the matter was tried—giving the insurer reasonable foundation to deny the claim—unlike this case where proof of loss was presented, and the insurer had no reasonable foundation for refusing to make the directed PIP payments.

Erie also discusses *Allstate Insurance Company v. McDowell*, 2002-CA-1949-MR, 2003 WL 22319462 (Ky. App. Oct. 10, 2003), in an attempt to distinguish these cases. As an unpublished opinion, however, we will not address its application herein.

Nevertheless, Erie asserts Appellees admitted Erie filed this action in good faith, seeking resolution of a justiciable controversy requiring interpretation of the MVRA, which ultimately serves as its reasonable foundation. This "admission" Erie relies upon is in numbered paragraph 12 of the answer. It states, "That the answering Defendants admit the allegations in numerical paragraph 20 of Plaintiff's Complaint." Numbered paragraph 20 of the complaint states:

> Plaintiff Erie files this Declaratory Judgment Action in good faith, seeking resolution of a justiciable controversy requiring the interpretation of Kentucky law, and in response to Defendants' unwarranted threat of a "necessary" suit to collect attorney fees and costs, in addition to PIP benefits which they demand be made solely in accordance with their directives, and in a manner contrary to Plaintiff Erie's obligations under the Kentucky [MVRA]. Under these circumstance[s], Plaintiff Erie further seeks judgment that Defendants are not entitled to an award of attorney fees or costs incurred in the defense of this action.

However, this "admission" is clearly refuted later in the same document within the counterclaim. In Count I of the counterclaim, numbered paragraph 11 states, "The failure of . . . Erie . . . to timely pay the . . . medical expenses as directed is without a 'reasonable foundation' under the MVRA[.]"[3] Judicial admissions are proper "only where the statements are unequivocal and must be considered to be

---

[3] The so-called admission was further disputed in Count II of the counterclaim; however, as previously mentioned, Count II was voluntarily dismissed.

deliberately true or false." *George M. Eady Co. v. Stevenson*, 550 S.W.2d 473, 473-74 (Ky. 1977). Such is not the case here.

Erie further contends its motion for interpleader is evidence its denial was made in good faith. However, acting misguidedly in good faith does not absolve an insurer from responsibility for increased interest or attorney's fees. All that is required to award increased interest and attorney's fees is "if delay was without reasonable foundation" or "if the denial or delay was without reasonable foundation." KRS 304.39-210(2); KRS 304.39-220(1). Erie's final argument is it did not "deny" the PIP claims. As noted in the statutes, a denial is not required to trigger these provisions, only delay without reasonable foundation. The trial court properly found that Erie delayed payment without reasonable foundation and awarded increased interest and attorney's fees.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders of the Floyd Circuit Court are AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| John M. Bush | Shane Hall |
| Mark A. Osbourn | Pikeville, Kentucky |
| Louisville, Kentucky | |