RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1076-MR

ALEX POINTER                                                          APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
          HONORABLE SARAH E. CLAY, JUDGE
          ACTION NO. 20-CR-000679

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ECKERLE, GOODWINE, AND McNEILL, JUDGES.

ECKERLE, JUDGE:  Pursuant to Kentucky Rule of Civil Procedure ("CR")

60.02(e) and (f), Appellant, Alex Pointer ("Pointer"), seeks review of the August

14, 2023, Order of the Jefferson Circuit Court denying his motion for relief from

his sentence.  While Pointer had reached a plea agreement with Appellee, the

Commonwealth (the "Commonwealth"), that called for either a shorter time of

incarceration or a longer period of probation, the Trial Court imposed a sentence of

probation with an alternative condition of serving more than 12 months of incarceration. After careful review, we reverse and remand the sentence which was not agreed upon and not authorized under the sentencing statutes. Upon a plea of guilty, the Trial Court may sentence a defendant in accordance with the agreement, add certain – but not unlimited – alternative conditions, or reject the plea entirely and send the case to trial before a jury to recommend a sentence. But it cannot create its own hybrid form of sentencing that varies significantly from the agreement and is not authorized by law.

### Factual and Procedural Background

On March 12, 2020, the Jefferson County Grand Jury indicted Pointer, charging him with attempted murder and first-degree assault. Record ("R.") at 1-2. The prosecution alleged that Pointer intentionally drove his vehicle into the driver's side door of another vehicle where the victim was seated. R. at 86. Pointer then exited his vehicle, pulled out a gun, and fired at the victim, striking him eight times. *Id.* The victim survived. *Id.* Pointer and the victim share children with the same woman, who was also in the victim's vehicle when Pointer fired the shots.

The case remained on the docket for the next three years. Eventually, on June 5, 2023, Pointer pled guilty, pursuant to *North Carolina v. Alford*,[1] to first-

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

degree wanton endangerment, amended from criminal attempt murder, and assault under extreme emotional disturbance, amended from first-degree assault. R. at 84-85. Prior to sentencing, Pointer had served 239 days in custody. Video Record ("VR") 7/25/23 at 11:37:34. The Commonwealth's recommendation, which Pointer accepted, was five-years for each conviction. R. at 84-85. The Commonwealth objected to probation, which is a strong stance. *Id*. The agreement provided that if the Trial Court granted probation, the two five-year sentences would run consecutively for a total of ten years. R. at 86-87. However, if the Trial Court sentenced Pointer to incarceration, the sentences would run concurrently for a total of five-years' imprisonment. *Id*.

On July 25, 2023, the Trial Court conducted a sentencing hearing. Pointer argued for probation, and the Commonwealth opposed probation based on the nature of the crime. VR at 11:39:16. After hearing from both sides, the Trial Court noted the lenience of the plea offer, stating that the facts of the case in relation to the plea agreement were disturbing as a five-year sentence was too light for "ramming someone's vehicle and shooting them eight times." VR at 11:48:47. However, the Trial Court did not reject the plea agreement even though it was within its power to do so. VR at 11:49:41. The Commonwealth had indicated that the victim did not wish to testify. The Trial Court then sentenced Pointer to a term of ten years' imprisonment probated for five years. However, the Court imposed

an additional condition of its own, requiring Pointer to spend 365 days in jail and successfully complete the Day Reporting Center ("DRC") program upon completion of the 365-day jail-term. VR at 11:48:47. In response, Pointer immediately objected, noting that the sentence was harsher than either sentence proposed by the Commonwealth. Additionally, the Trial Court refused to allow Pointer credit for the 239 days he already served towards the 365-day probation condition. And Pointer would then have to spend even more time completing the DRC program, which required a lengthy period of home incarceration. The Trial Court stated that it was "not confident that you won't be released more quickly without the kinds of services you need if you're sent to prison for five years. The DRC program is the kind of sentence you need." VR at 11:50:30.

Pointer then moved to withdraw his motion for probation, which the Trial Court denied. VR at 11:52:21. He had instead requested that he serve the five-year period with a credit for the 239 days, which would result in his release much sooner than 365 days more of jail time and then added home incarceration. Importantly, and perhaps recognizing the leniency of the prosecution's plea offer as the Trial Court had done, he did not request to set aside his plea immediately. It was within Pointer's rights to make such a request, but he chose not to do so. He only requested that he serve the five years, and not receive the bargained-for ten-year probated sentence. The Trial Court then allowed Pointer to withdraw his

motion for probation but it then determined that Pointer would still be probated. VR at 11:53:00. At this point, Pointer argued the Trial Court had substantially changed, even abrogated, the agreement between the parties. VR at 11:54:00. The Trial Court stated that the 365 days in jail and inclusion of the DRC program as a condition of probation was within its discretion. *Id.* Again, Pointer did not move to set aside his plea.

The following day, on July 26, 2023, the Trial Court issued its Judgment with Sentence of Probation with a ten-year, consecutive sentence covering both charges, and providing that probation could continue beyond five years until restitution of $2,000.00 was paid in full. R. at 94-96. As a condition of probation, the Trial Court required Pointer to spend 365 days in the Louisville Metro Detention Center ("LMDC") and upon release, to complete the DRC program. *Id.* The Judgment stated that Pointer would be entitled to jail-time credit for the ten-year sentence, to be calculated by the Kentucky Department of Corrections ("KDOC") under KRS[2] 532.120. *Id.*

On July 27, 2023, Pointer filed a motion under CR 60.02(e) and (f), alleging his sentence was illegal and inequitable. R. at 101-103. In his motion, Pointer stated that the Trial Court imposed a ten-year probated sentence with the additional conditions that he must serve 365 days in LMDC, complete the DRC

---

[2] Kentucky Revised Statutes.

program, and receive no jail-time credit for the time he spent in jail awaiting his sentencing for this case. *Id*. Pointer argued that the conditions of his probation involving LMDC and home incarceration exceeded the statutory maximum allowed under KRS 533.030(6). *Id*. Pointer further asserted the Trial Court had no authority to deny him the jail-time credit based on KRS 532.120(3). Pointer also alleged at this point that the Trial Court should have then allowed him to withdraw his plea under Kentucky Criminal Rule of Procedure ("RCr") 8.10, because the Trial Court had in essence already rejected his plea agreement. *Id*. He neglected to mention that he did not move to set aside his plea. Pointer did note that he had withdrawn his request for probation before the Trial Court rendered the probated sentence. R. at 101-03.

Pointer filed a supplemental motion to vacate on July 27, 2023, claiming the Trial Court had substituted an illegal sentence for another one by changing its order to reflect that the jail-time credit would be calculated by KDOC. R. at 104-06. Additionally, Pointer stated the Trial Court's sentencing him to spend 365 days in LMDC followed by completion of the DRC program, which includes home incarceration, does not cure the illegality of the 365-day cap under KRS 533.030(6). *Id*. The Commonwealth responded that placing conditions on Pointer's probation did not equate to a rejection of the plea agreement. *Id*.

-6-

On August 14, 2023, the Trial Court held a hearing on Pointer's CR 60.02 motion. VR 8/14/23 at 11:22:00. Mr. West, who runs the DRC program, testified. *Id*. Mr. West described the DRC program as a behavior-based program where individuals are placed on home incarceration with GPS monitoring, but the individuals receive more flexibility than the participants of the traditional home incarceration program. VR at 11:25:30. The program takes an average of 12 to 18 months to complete before being eligible to be removed from home incarceration; however, an individual can be eligible within six months depending if he completes the program faster. VR at 11:26:00, 11:39:00, 11:43:00. During oral arguments, Pointer asserted that the sentence imposed by the Trial Court would mean that the approximately eight months that Pointer had spent in jail awaiting the sentencing would not be credited on either the 365 days in jail or the months of the DRC program. VR at 11-45:11 – 11:56:00. Pointer argued that under this scenario, he could be in custody while on probation for a period of over two years, with no credit or opportunity for parole, and that time would be longer than he would have served if he had been sentenced to five years imprisonment, where he would be granted credit for his time served and have a chance to see the parole board. *Id*. The Trial Court determined that Pointer's sentence complied with the law and was within the discretion provided under the applicable statutes. VR at 12:00:06. The Trial Court also believed the DRC program was necessary for

-7-

Pointer's rehabilitation. *Id*. That Court issued an Order the same day, stating that Pointer's motion was denied for the reasons stated on the record. R. at 117. This appeal follows.

## Standard of Review

A motion pursuant to CR 60.02 is reviewed for an abuse of discretion. *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). The Trial Court's decision will be affirmed unless there is a showing of some "flagrant miscarriage of justice." *Gross*, 648 S.W.2d at 858. Statutory interpretation is an issue of law which is reviewed *de novo*. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 612 (Ky. 2004).

## Analysis

On appeal, Pointer argues first that KRS 533.010 and 533.030(6) do not allow for the imposition of both probation and probation with an alternative sentence. Second, Pointer notes that sentencing to the DRC program requires the agreement of the defendant pursuant to KRS 533.017, and he did not agree to the alternative sentencing plan.

KRS 533.010 states, in important part:

(2) Before imposition of a sentence of imprisonment, the court shall consider probation, probation with an

-8-

alternative sentencing plan, or conditional discharge. Unless the defendant is a violent felon as defined in KRS 439.3401 or a statute prohibits probation, shock probation, or conditional discharge, after due consideration of the defendant's risk and needs assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation or conditional discharge shall be granted, unless the court is of the opinion that imprisonment is necessary for protection of the public[.]

. . .

(6) Upon initial sentencing of a defendant or upon modification or revocation of probation, when the court deems it in the best interest of the public and the defendant, **the court may order probation with the defendant to serve one (1) of the following alternative sentences**:

(a) To a halfway house for no more than twelve (12) months;

(b) To home incarceration with or without work release for no more than twelve (12) months;

(c) To jail for a period not to exceed twelve (12) months with or without work release, community service and other programs as required by the court;

(d) To a residential treatment program for the abuse of alcohol or controlled substances;

(e) To a reentry center for no more than twelve (12) months; **or**

(f) To any other specified counseling program, rehabilitation or treatment program, or facility.

KRS 533.010(2) and (6) (emphasis added). "When engaging in statutory interpretation, it is imperative that we give the words of the statute their literal meaning and effectuate the intent of the legislature." *Samons v. Kentucky Farm Bureau Mut. Ins. Co.*, 399 S.W.3d 425, 429 (Ky. 2013). Pursuant to KRS 533.010(6), a Trial Court is allowed to impose only one of the provided six alternative sentencing plans along with probation. Thus, the Trial Court could order Pointer to serve up to 12 months either in jail *or* in a home incarceration program like the DRC program, but not both.

The Commonwealth argues that Pointer's sentence is consistent with his plea agreement; thus, the Trial Court did not abuse its discretion by sentencing Pointer to jail and the DRC program on top of his ten-year, probated sentence. It is true that "granting of probation is wholly within the discretion of the trial court," and the Trial Court has additional discretion to impose conditions on probation. *Burke v. Commonwealth*, 506 S.W.3d 307, 314 (Ky. 2016). The Commonwealth also points to KRS 533.030(6), which states:

> (6) When imposing a sentence of probation or conditional discharge, the court, in addition to conditions imposed under this section, may require as a condition of the sentence that the defendant submit to a period of imprisonment in the county jail or to a period of home incarceration at whatever time or intervals, consecutive or nonconsecutive, the court shall determine. The time actually spent in confinement or home incarceration pursuant to this provision shall not exceed twelve (12) months or the maximum term of imprisonment assessed

pursuant to KRS Chapter 532, whichever is the shorter. Time spent in confinement or home incarceration under this subsection shall be credited against the maximum term of imprisonment assessed for the defendant pursuant to KRS Chapter 532, if probation or conditional discharge is revoked and the defendant is sentenced to imprisonment. Any prohibitions against probation, shock probation, or conditional discharge under KRS 533.060(2) or 532.045 shall not apply to persons convicted of a misdemeanor or Class D felony and sentenced to a period of confinement or home incarceration under this section.

KRS 533.030(6). The Commonwealth argues that the above language allows for the imposition of jail time along with completion of the DRC program as conditions of Pointer's probation. The DRC program is a type of home incarceration program that includes the use of GPS monitoring and is the same home incarceration program provided by the county jail. VR 8/14/23 at 11:29:00. During Pointer's sentencing hearing, Mr. West stated that the DRC program can take anywhere from six to 18 months to complete, with an average of 12 months. *Id*. at 11:32:00.

When interpreting statutes, "a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." *Cosby v. Commonwealth*, 147 S.W.3d 56, 58 (Ky. 2004) (quoting *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002)). According to the Commonwealth, under Pointer's interpretation of the statutory language provided in KRS 533.010 and 533.030, the DRC program

-11-

would never be available as a condition of probation because the ending of the program is fluid and can potentially exceed 12 months. But the issue with Pointer's sentence is the condition of 365 days in jail *along with* additional time completing the DRC program. KRS 533.010(6) clearly allows for either jail incarceration or home incarceration as a condition of probation – but not both. Under any scenario, completion of the DRC program along with spending 365 days in the county jail as a condition of his probation is a violation of KRS 533.010(6). Thus, the Trial Court abused its discretion by sentencing Pointer to both jail time for a year and then a consecutive home incarceration period.

Furthermore, pursuant to KRS 533.017(2)(c), a defendant must agree in writing to comply with the program's written terms and conditions. KRS 533.017(2)(c). The record does not reflect that Pointer has agreed to the DRC program. In fact, because Pointer brought this appeal arguing that his sentence was a violation of KRS Chapter 533, it can be said Pointer does not agree to the DRC program's terms and conditions.

As for the time Pointer has already served while awaiting sentencing, the Trial Court did not abuse its discretion when it determined that time to be credited towards Pointer's maximum sentence is to be determined by the corrections board. Pursuant to KRS 532.120(3):

> Time spent in custody prior to the commencement of a
> sentence as a result of the charge that culminated in the

-12-

sentence shall be credited by the Department of Corrections toward service of the maximum term of imprisonment in cases involving a felony sentence and by the sentencing court in all other cases. If the sentence is to an indeterminate term of imprisonment, the time spent in custody prior to the commencement of the sentence shall be considered for all purposes as time served in prison.

KRS 532.120(3). In *Commonwealth v. Walker*, 989 S.W.2d 165 (Ky. 1999), the Kentucky Supreme Court determined the time that Walker served prior to sentencing would be credited towards his maximum term of imprisonment of five years instead of the six months he was ordered to serve in a juvenile detention center as a condition of his probation. *Id.* at 165. Therefore, the 239 days Pointer has spent in custody prior to sentencing was correctly credited towards his maximum sentence of ten-years' imprisonment.

### Conclusion

For the foregoing reasons the August 14, 2023, Order of the Jefferson Circuit Court is REVERSED and REMANDED. The Trial Court remains free to reject the plea agreement officially, sentence Pointer to serve five years in prison, or sentence him to ten years with probation that may include incarceration of some sort for no more than 12 months.

ALL CONCUR.

-13-

BRIEFS FOR APPELLANT:

Rob Eggert
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky