NEURODIAGNOSTICS,
INC., Appellant,

v.

KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Appellees.

No. 2006–SC–000857–DG.

Supreme Court of Kentucky.

April 24, 2008.

David T. Enlow, Tracey S. Enlow, Enlow & Enlow, PLLC, Lexington, KY, Counsel for Appellant.

Christina L. Vessels, Guy R. Colson, Fowler, Measle & Bell, LLP, Lexington, KY, Counsel for Appellee, Kentucky Farm Bureau Mutual Insurance Company.

Douglas L. Hoots, Tyler Griffin Smith, Landrum & Shouse, LLP, Lexington, KY, Counsel for Appellee, State Farm Mutual Automobile Insurance Company.

Opinion of the Court by Justice MINTON.

At issue in this case is whether, under the Kentucky's Motor Vehicle Reparations Act[1] (MVRA), a medical provider can have a direct right of action against an automobile insurer for basic reparation benefits (BRB) by assignment from the insured. We conclude, consistent with the lower courts that have addressed this issue, that under the old law, it could; but under the current law, it cannot. So we affirm.

This opinion involves two lawsuits filed by Neurodiagnostics, PSC, d/b/a Lexington Diagnostic Center (LDC), in district court. Both cases involved payment for medical services provided by LDC to individuals who had sustained injuries in automobile accidents. The Court of Appeals consolidated the two cases for the purposes of appeal because they involved the same substantive issue: whether LDC could pursue direct rights of action for payment of BRB against automobile insurers of its patients by assignment from the patients.

## I. *THE CASE AGAINST STATE FARM.*

LDC filed the first case against State Farm Mutual Automobile Insurance Company. State Farm issued an automobile insurance policy to Donald Hughes. The policy contained, in part, mandatory no-fault (also known as personal injury protection, (PIP)) coverage of $10,000 in BRB. Hughes claimed that he was injured in an automobile accident and asserted a claim to recover his no-fault benefits. KRS 304.39–241 provides that "[a]n insured may direct the payment of benefits among the different elements of loss,[2] if the direction is provided in writing to the reparation

obligor. A reparation obligor shall honor the written direction of benefits provided by an insured on a prospective basis." Under KRS 304.39–241, Hughes directed that his no-fault benefits be distributed initially to satisfy his lost wages; and he directed that any remaining funds be paid toward his outstanding medical expenses. After Hughes's initial directive, he sent a modified directive by which he requested that State Farm pay benefits to a specific healthcare provider for surgery. The letter further directed that after payment of the surgical bill, the remaining benefits should be apportioned for satisfaction of lost wages.

Once State Farm paid the surgical bill and lost wages, it had paid out the full $10,000 of no-fault benefits. There was no money left to pay medical expenses from other medical providers, including two bills that LDC submitted to State Farm for medical services rendered to Hughes after his automobile accident. One bill was in the amount of $1,152; and the other was in the amount of $1,242, for a total of $2,394. LDC submitted the bills to State Farm before Hughes asserted his claim to State Farm for his no-fault benefits and provided his written direction for payment of those benefits.

At the time LDC rendered the medical services to Hughes, it requested that he sign a form entitled, "Agreement to Pay and Assignment of Benefits." The form stated, in part, as follows:

> I understand that LDC will attempt to collect funds for the benefit of the patient or me. However, in the event the insurance (except workers' compensation) delays payment for longer than 45 days, LDC will expect payment from

---

1. Kentucky Revised Statutes (KRS) 304.39–010–304.39–350.

2. Under KRS 304.39–020(5), as applied to this case, the elements of accrued economic loss are medical expenses and work loss.

me, even if I have insurance coverage or if any other person or entity will ultimately pay for the patient's services. I understand that I am ultimately responsible for this bill.

. . . .

If this is a motor vehicle claim, I hereby direct my reparation obligor (my motor vehicle insurance company) *State Farm* to pay LDC for today's services, pursuant to KRS 304.39–241. Initial here

———

I irrevocably assign LDC, its successors and assigns, all benefits payable to me (or the patient) from my insurance, workers' compensation, auto insurance and/or attorney for today's services. This assignment does not release me from my responsibility to pay LDC as I have agreed.

Hughes initialed the blank in the provision pertaining to KRS 304.39–241 and signed the form. LDC relied on the direction and the assignment in filing suit against State Farm for payment of Hughes's outstanding medical expenses from his no-fault benefits.

State Farm filed a motion for summary judgment or, in the alternative, to dismiss. In its motion, State Farm requested that the district court dismiss or grant summary judgment in its favor because (1) State Farm paid its policy limits as directed by Hughes, the insured; (2) the assignment of benefits was not enforceable against State Farm; (3) State Farm was not a party to the assignment of benefits; (4) LDC has no standing under the MVRA to pursue a claim; and (5) regardless, KRS 304.39–241, which pertains to the direction of payment of benefits, overrides any rights that might otherwise be available under the assignment.

About two months after State Farm's motion for summary judgment/motion to dismiss, LDC filed a motion for summary judgment. The district court granted State Farm's motion to dismiss. LDC appealed, and the circuit court affirmed the district court's order of dismissal. The Court of Appeals granted discretionary review and held that, under the circumstances, LDC simply lacked standing to assert a claim by attempted assignment against State Farm.

## II. *THE CASE AGAINST FARM BUREAU.*

LDC filed the second of the two cases at issue against Kentucky Farm Bureau Mutual Insurance Company. Farm Bureau had issued an automobile insurance policy to Blanch Merryman. The policy contained, in part, mandatory no-fault coverage of $10,000 in basic reparation benefits. Merryman's granddaughter, Jennifer Lee McCord, claimed that she was injured in an automobile accident and asserted a claim to recover no-fault benefits under Merryman's policy. At the time of the accident, McCord was living with Merryman.

Fifteen months after the accident, McCord sought treatment with a chiropractor for injuries that she alleged stemmed from the automobile accident. The chiropractor ordered magnetic resonance imaging (MRI) of both McCord's lumbar and cervical spines, which LDC performed. Similar to Hughes's case, at the time McCord had the MRIs, LDC required her to complete the form entitled, "Agreement to Pay and Assignment of Benefits." The form contained the exact same language as the one that Hughes signed. McCord completed the form and provided that her reparation obligor was Farm Bureau. LDC submitted its bills for the two procedures, also totaling $2,394, to

Farm Bureau for payment from McCord's no-fault benefits.

In McCord's case, however, Farm Bureau sent the bills to an outside company for peer review. A reviewing physician advised Farm Bureau that it should not allow payment because (1) McCord did not initiate the treatment until fifteen months after the motor vehicle accident; and (2) no medical history existed to indicate that the treatment was accident-related. The reviewing physician recommended that payment for the billed MRIs should be submitted to McCord's health insurance provider. Farm Bureau notified LDC that it would not pay for the MRIs and advised LDC of the recommendation to submit its bills to the health insurance provider.

Choosing to rely instead on the assignment provisions of the form that McCord completed when she had the two MRIs, LDC filed suit against Farm Bureau. Farm Bureau filed a motion to dismiss the case in which it argued that LDC's cause of action should be dismissed because (1) Kentucky law does not provide LDC with a direct cause of action against Farm Bureau; and (2) the peer review, conducted under Kentucky law, found LDC's charges and services neither reasonable nor medically necessary. In an opinion and order, the district court granted Farm Bureau's motion to dismiss LDC's action, with prejudice. LDC appealed, and the circuit court affirmed the district court's order of dismissal. The Court of Appeals granted discretionary review and held—consistent with the companion State Farm case—that LDC simply lacked standing to assert a claim by attempted assignment against State Farm.

## III. RESOLUTION AND DISCUSSION OF THE ISSUE.

A. *The Enactment of KRS 304.39–241 and Simultaneous Repeal of KRS 304.39– 240 Rendered Unenforceable a Motor Vehicle Accident Victim's Assignment to a Medical Provider of Any Right to Benefits Under the MVRA.*

 The MVRA is an exclusive body of law that provided for assignment of rights to benefits when enacted.[3] However, the legislature repealed the assignment of rights to benefits provision in 1998. At the same time that the legislature repealed the assignment of benefits provision, it enacted a new provision that allowed the insured to direct the payment of benefits among the different elements of loss.[4] So the issue we must resolve is what the legislature intended when it repealed KRS 304.39–240 and enacted KRS 304.39–241. And because resolution of the issue in this case is one of statutory interpretation, a pure question of law, it is subject to de novo review by this Court.[5]

Upon review, we conclude that the MVRA no longer affords a direct right of action by assignment to medical providers against reparation obligors. Instead, the control rests with the insured to direct payment of his or her benefits among the different elements of loss. This interpretation is consistent with the purposes behind the MVRA of (1) providing prompt payment to victims of motor vehicle accidents;[6] (2) encouraging "prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care

---

**3.** KRS 304.39–240, entitled "Assignment of benefits" (repealed 1998).

**4.** KRS 304.39–241.

**5.** *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet,* 983 S.W.2d 488, 490 (Ky.1998).

**6.** KRS 304.39–010(2).

and rehabilitation";[7] (3) reducing "the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities[,] and uncertainties of the liability system";[8] and (4) helping "guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical[,] and equitable system of motor vehicle accident reparations[.]"[9]

With these purposes of the MVRA in mind, we turn to what the law used to be and compare it to what it is now. When the legislature enacted the MVRA in 1975, the Act included the following provision:

> 304.39–240 ASSIGNMENT OF BENEFITS
>
> An assignment of or agreement to assign any right to benefits under this subtitle for loss accruing in the future is unenforceable except as to benefits for:
>
> (1) Work loss to secure payment of alimony, maintenance, or child support; or
>
> (2) Medical expense to the extent the benefits are for the cost of products,

services, or accommodations provided or to be provided by the assignee.

This narrow provision authorized assignment by the insured of a right to benefits only in two circumstances, one being (as we have in this case) for medical expenses to the extent the benefits were for the cost of services provided or to be provided by the assignee. Under a valid assignment, the provider had a direct right to claim benefits from the no-fault insurer.[10]

That which the legislature gives, however, the legislature may take away.[11] In 1998, the legislature repealed KRS 304.39–240. "The repeal of a statute without any reservation takes away all remedies given by the repealed statute[.]"[12] The legislature did not simply repeal KRS 304.39–240, however, because it enacted KRS 304.39–241 simultaneously with its repeal of KRS 304.39–240. And the enactment of KRS 304.39–241 and repeal of KRS 304.39–240 reflect a legislative intent to eliminate any assignment of a right to benefits.[13] So, where KRS 304.39–240 allowed assignments under only two narrow circumstances, with the express repeal in 1998 of KRS 304.39–240, any purported

---

7. KRS 304.39–010(3).

8. KRS 304.39–010(5).

9. KRS 304.39–010(6).

10. *See U.S. v. Allstate Ins. Co.*, 754 F.2d 662, 666 (6th Cir.1985) ("In section 304.39–240, the Kentucky legislature specifically made enforceable an assignment of a right to benefits for 'medical expense to the extent the benefits are for the cost of products, services, or accommodations provided or to be provided by the assignee.' It thus clearly contemplated that a provider's right to recover should arise only from assignment. In addition, in providing that 'medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant,' section 304.39–210 makes the provider an optional payee or

incidental beneficiary of no-fault policies in order to facilitate the insured person's receipt of benefits, and does not make the provider a third party beneficiary with a right to enforce the insurance contract.").

11. *Jacober v. Board of Com'rs of City of Covington*, 607 S.W.2d 126, 127 (Ky.App.1980); *Aldridge v. Commonwealth*, 192 Ky. 215, 232 S.W. 619, 620 (1921).

12. 1A Sutherland Statutory Construction § 23:7 (6th ed.).

13. *Roberts ex rel. Roberts v. George W. Hill & Co.*, 23 S.W.3d 635, 636 (Ky.2000) (holding that in workers' compensation case, the enactment of one statute and repeal of another reflected a legislative intent to eliminate a tort remedy available previously under the repealed statute).

assignment of rights to benefits under the MVRA is unenforceable.

The new statutory provision, KRS 304.39–241, allows the insured to direct the payment of his or her benefits among the different elements of loss if the direction is provided, in writing, to the reparation obligor. With this change in the law, the legislature recognized that it is a more efficient, economical, and equitable system to keep the provider out of the reparations process and afford the insured the control of how his or her benefits are paid because there is only a certain amount of money available for payment. If each and every medical provider obtained an assignment—as a matter of course—of any right to benefits under the MVRA, the insured's benefits could be exhausted after an accident, leaving the insured no ability to decide at a later date that he or she would be better served by directing reparation benefits to cover some other element of loss, such as economic loss.

By LDC's own contract with its patient, it recognizes that the insured has the control under KRS 304.39–241 of how the benefits are distributed by including a direction on its "Agreement to Pay and Assignment of Benefits" form. Before the purported assignment provisions, the form states: "If this is a motor vehicle claim, I hereby direct my reparation obligor (my motor vehicle insurance company) [blank provided to fill in name of insurance company] to pay LDC for today's services, pursuant to KRS 304.39–241."

We have concluded that the assignment provisions of the LDC contract are unenforceable because they are no longer permitted under the MVRA. We cannot agree with LDC's contention that KRS 304.39–240 was actually a limitation on the ability

to assign rights, and the legislature removed the limitation when it repealed KRS 304.39–240. In our opinion, the plain language of KRS 304.39–240 indicates that assignments were unenforceable with two limited exceptions. And with the express repeal of KRS 304.39–240, any assignment of benefits under the MVRA is unenforceable.

Finally, on the issue of assignment, we address LDC's reliance on *Phoenix Healthcare of Kentucky, L.L.C. v. Kentucky Farm Bureau Mut. Ins. Co.*,[14] a Kentucky Court of Appeals case decided after the repeal of KRS 304.39–240 in which Phoenix Healthcare filed a cause of action against the reparation obligor under an assignment from the insured. Consistent with the conclusion of the Court of Appeals in this case, we believe that the *Phoenix Healthcare* decision does not apply here because the opinion did not address the validity of the assignment. The issues presented for the court's consideration were whether the MVRA provided the exclusive remedy for the insurer's late payment or whether the appellant could recover punitive damages under the Unfair Claims Settlement Practices Act.[15] And since the issue was neither presented nor ruled upon, it does not constitute persuasive authority in this case.

B. *No Other Provision of the MVRA Can Be Construed to Entitle Medical Providers to Bring a Direct Action Against the Insurers.*

■ LDC contends that even without an assignment, it is entitled to bring a direct action against the insurers because the insureds directed the insurers to pay LDC under KRS 304.39–241; but the insurers failed to follow the directions. In support, LDC argues that affording a direct right

---

**14.** 120 S.W.3d 726 (Ky.App.2003).

**15.** *Id.* at 727–28.

of action to the medical provider is consistent with the MVRA policy stated in KRS 304.39–010(3) of encouraging prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation. LDC believes that if medical providers are not entitled to assert claims for payment, there is little motivation for an insurance company to make prompt and proper payments.

We believe, however, that with the 1998 enactments and amendments to the MVRA and repeal of KRS 304.39–240, the legislature has developed a process, as discussed above, which it believes will carry out the policies of the Act. That process allows the insured to direct the payment of benefits, under KRS 304.39–241, among the different elements of loss. And other provisions of the MVRA, amended or enacted at the same time, support the process. For example, when the legislature enacted KRS 304.39–241, it amended KRS 304.39–210(1), which previously concluded with the following sentence, "Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant[.]" As amended, that sentence now states, "Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates." In addition, the legislature added another sentence in KRS 304.39–210(1) to clarify when benefits are overdue: "Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss." [16] Finally, the legislature enacted another new section of the MVRA at the same time that it enacted KRS 304.39–241. That section is codified at KRS 304.39–245 and reads as follows:

A reparation obligor may request or negotiate a reduction or modification of charges from a provider of services to a secured person. In no event shall a provider of services which agrees to a reduction or modification of the charges bill the secured person for the amount of the reduction or modification. Nothing in this section is intended to prohibit a provider of services from billing charges to a secured party if the charges are not paid by a reparation obligor because the reparation benefits have been exhausted.

These comprehensive changes throughout the MVRA must be considered

---

**16.** KRS 304.39–210(1), as amended effective July 15, 1998, is, in its entirety: "Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation. Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss. If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates."

in ascertaining whether the legislature intended to allow medical providers a direct right of action against reparation obligors in spite of the express repeal of KRS 304.39–240.[17] Reading KRS 304.39–241 in light of the MVRA as a whole, we conclude that a medical provider, such as LDC, is an optional payee or incidental beneficiary of the no-fault policies.[18] And, as an incidental beneficiary, LDC has no direct right of action against the reparation obligor. If a medical provider does not receive payment from the reparation obligor, either because benefits have been exhausted (the State Farm case) or because the reparation obligor determines that the charges were neither reasonable nor medically necessary (the Farm Bureau case), then the insured is the party that is ultimately responsible for payment. And it is the insured that has the direct right of action against the reparation obligor if he or she disagrees with the way in which his or her benefits were either paid or not paid.

■ We conclude that a medical provider has no standing under the MVRA to bring a direct action against the reparation obligor/insurer. For this reason, we will not address the additional issue raised by LDC in the State Farm case pertaining to whether its bill and assignment of benefits form constitute reasonable proof under KRS 304.39–210(1) of the fact and amount of loss realized.

We have chosen to decide this case under the current provisions of the MVRA. We decline, as did the Court of Appeals, to consider the issue of whether the insurance contracts also prohibited assignments by their terms. Those contracts are not part of the district court record in either case. In both cases, however, the insurers argued that the cases should be dismissed because LDC did not have standing under the MVRA to bring a direct cause of action against them. We agree and affirm on that ground.[19]

## IV. CONCLUSION.

Among the goals of the MVRA are to provide prompt payment of basic reparation benefits to victims of motor vehicle accidents and to help guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical, and equitable system of motor vehicle accident reparations. In 1998, the legislature instituted the process of allowing the insured to direct the payment of benefits among the different elements of loss. At the same time, the legislature repealed the provision of the MVRA that allowed an assignment of any right to benefits under the Act. The repeal of the assignment provision took away any direct cause of action by the medical provider,

---

**17.** *Kentucky Tax Comm'n v. Sandman*, 300 Ky. 423, 189 S.W.2d 407, 409 (1945) ("It is elementary that each section of a legislative act should be read in the light of the act as a whole; with a view to making it harmonize, if possible, with the entire act, and with each section and provision thereof, as well as with the expressed legislative intent and policy."), *overruled on other grounds by Commonwealth ex rel. Allphin v. Borders*, 267 S.W.2d 940, 941 (Ky.1954).

**18.** *See Allstate*, 754 F.2d at 666 (considering Kentucky MVRA as it existed before the re-

peal of KRS 304.39–240 and in conjunction with other statutory provisions of the Act, such as KRS 304.39–210, and concluding that provider was an optional payee or incidental beneficiary of no-fault policies).

**19.** *Richmond v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 572 S.W.2d 601, 602 (Ky.App.1977), *discretionary review denied*, ("It is the duty of the reviewing court to consider all the grounds raised, and to affirm the judgment if it should properly have been entered on any of the grounds raised.").

and no other current provision of the MVRA can be construed to afford a direct cause of action to medical providers. We affirm the conclusion of the Court of Appeals that—on basis of standing—LDC could not pursue direct rights of action for payment of basic reparation benefits against automobile insurers of its patients by assignment from the patients.

All sitting, except SCHRODER, J. All concur.