RENDERED:  DECEMBER 15, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1405-MR

ERIE INSURANCE EXCHANGE                      APPELLANT


                  APPEAL FROM FLOYD CIRCUIT COURT
v.             HONORABLE JOHNNY RAY HARRIS, JUDGE
                     ACTION NO. 19-CI-00059


MEGAN JOHNSON; TERRI REED;
AND SHANE HALL, ATTORNEY AT LAW           APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

ECKERLE, JUDGE:  Appellant, Erie Insurance Exchange ("Erie"), appeals from findings of fact, conclusions of law, and declaratory and summary judgments entered by the Floyd Circuit Court.  Erie argues it was not required to follow the written directives from its insured regarding the order in which medical expenses were to be paid.  Erie further argues that its interpretation of the controlling

statutory language was reasonable, precluding the Trial Court's award of excess interest and attorney's fees. We conclude that the statutory scheme allows the insureds to direct payments within an element of loss, and that Erie's delay in making those payments as directed was without reasonable foundation in light of the clear, statutory language. Hence, we affirm the summary judgment and awards of excess interest and attorney fees.

In the earlier appeal, this Court set out the facts of this action as follows:

> On October 14, 2018, Megan Johnson and Terri Reed (collectively Appellees) were involved in an automobile accident. At the time of the accident, Johnson was driving, and Reed was a passenger in Johnson's vehicle, which was insured by Erie. The insurance policy covering the vehicle included personal injury protection (PIP) coverage. Appellees sought treatment from multiple medical care providers for injuries sustained during the accident. On October 23, 2018, counsel for Appellees sent a letter to Erie requesting PIP benefits be reserved until further directed. On January 16, 2019, counsel requested Erie use PIP funds to pay one of the medical care providers for treatment of Appellees. Erie refused, claiming it was required to pay medical bills in the order received and it had received medical bills from other providers predating treatment with the provider for whom Appellees requested payment. Erie's position is documented in a letter from its counsel dated January 18, 2019. Counsel for Appellees responded to Erie's letter on the same day, explicitly directing Erie to pay medical bills for the chosen provider only – Hackney and Hensley Chiropractic – and threatening suit if this was not accomplished within ten days.

On January 25, 2019, Erie filed a complaint for declaratory relief and notice of intent to file interpleader. Erie requested the trial court settle the dispute between it and counsel for Appellees concerning the interpretation of Kentucky law governing how PIP benefits are to be paid, as well as clarify whether it is responsible for the attorney's fees of Appellees. On February 15, 2019, Appellees filed their answer and counterclaim, the first count of which alleged they are entitled to increased interest and attorney's fees since Erie was without reasonable foundation for refusing to pay their medical provider as directed. The second count appears to attempt to aver claims of fraud and breach of fiduciary duty.

On April 11, 2019, Erie moved the trial court for interpleader and for leave to deposit money in the court, as well as for summary judgment. On May 7, 2019, Appellees also moved the trial court for summary judgment. On June 4, 2019, the trial court denied Erie's motion for summary judgment and found Erie responsible for all of Appellees' medical bills "immediately" upon entry of its order. Erie timely moved the trial court to reconsider or, in the alternative, alter, amend, or vacate its order. While that motion was pending, Appellees renewed their motion for summary judgment, and a stipulation of partial voluntary dismissal – concerning count two of their counterclaim – was entered. On August 22, 2019, the trial court entered an order altering and amending its order of June 4, 2019, striking the language regarding immediate payment. On the same date, the trial court also entered an order stating it would award attorney's fees. Appellees moved the trial court for approval of their attorney's fees, and on September 20, 2019, the trial court awarded attorney's fees of $14,383.

*Erie Ins. Exch. v. Johnson*, No. 2019-CA-1449-MR, 2021 WL 1823283, at *1 (Ky. App. May 7, 2021), *discretionary review granted* (Dec. 8, 2021), *vacated in* 647 S.W.3d 198 (Ky. 2022).

This Court affirmed the Trial Court's holding, agreeing that Erie lacked a legitimate and bona fide reason for refusing to pay the medical expenses as directed. Thus, this Court held that the Trial Court properly ordered Erie to pay those fees and the attorney's fees incurred by the Appellees. *Id.* at *5. On discretionary review, our Supreme Court vacated this Court's opinion and dismissed the appeal. The Supreme Court held that the Trial Court's order denying Erie's motion for summary judgment was not a final and appealable order. Consequently, neither this Court nor the Supreme Court had subject-matter jurisdiction to render a decision on the merits. *Erie Ins. Exch. v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022). The Court further held that the Trial Court's orders awarding attorney fees lacked finality language, and it never ruled on the Appellees' claim for excess interest. *Id.* at 203-04.

Following remand, the parties submitted the remaining issues to the Trial Court. After briefing, the Trial Court issued Findings of Fact, Conclusions of Law, and a Judgment on November 16, 2022. The Trial Court again found that the Motor Vehicle Reparations Act ("MVRA") affords a PIP insured control over the manner in which the medical benefits will be paid. As a result, the Court held that

-4-

Erie was not entitled unilaterally to determine the extent of medical services the Appellees were entitled to receive, the amount which the Appellees were entitled to pay for such services, or the timing of the payment. In the absence of any claim that the medical treatment received by the Appellees was unreasonable, the Court further held that the Appellees were entitled to direct Erie either to pay the medical providers directly or reimburse them for out-of-pocket medical expenses.

Because Erie lacked a reasonable foundation not to comply with the Appellees' payment directions, the Trial Court concluded that Erie was obligated to pay the Appellees' attorney fees under KRS[1] 304.39-320, and excess interest at the rate of 18% per annum under KRS 304.39-210. Accordingly, the Trial Court: granted the Appellees' motion for summary judgment on the PIP payment directive issue; denied Erie's motion for summary judgment on that issue; granted the Appellees' motion for summary judgment regarding Erie's lack of reasonable foundation for the denial or delay in making PIP payments; denied Erie's motion for summary judgment on that issue; granted the Appellees' motion for attorney fees; and denied Erie's motion regarding the attorney's fee claim. The Trial Court directed Erie to pay excess interest at the rate of 18% per annum on overdue PIP payments. Finally, the Court entered a judgment to the Appellees' counsel for attorney's fees in the amount of $51,048.00. The Trial Court also designated this

---

[1] Kentucky Revised Statutes.

-5-

order as final and appealable pursuant to CR² 54.02. Erie now appeals from this judgment. Additional facts will be set forth below as necessary.

"[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The Trial Court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the Trial Court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

Kentucky's common-law does not allow for recovery of attorney fees. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787

---

² Kentucky Rules of Civil Procedure.

(Ky. 2017). Rather, attorney fees are only recoverable where authorized by statute or a specific contractual provision. *Id.* The issue before the Trial Court and this Court concerns Erie's obligations under the MVRA and, in particular, KRS 304.39-210(1) and 304.39-241. We conduct a *de novo* review of matters involving statutory interpretation. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012).

The parties agree that the MVRA governs matters involving payment of claims involving automobile accidents. Erie argues the MVRA requires PIP carriers to pay PIP losses as they accrue on a first-in/first-out basis. As noted by both this Court and our Supreme Court in the prior opinions, there is no published case law on this exact issue. Nevertheless, we need not look beyond the MVRA itself to resolve this dispute.

Insurance carriers are required to pay basic reparation benefits, including PIP benefits, as losses accrue. Concerning this duty, KRS 304.39-210(1) provides:

> Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays

them within fifteen (15) days after the period of accumulation. *Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss.* If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates.

(Emphasis added.)

The MVRA defines a "loss" as an "accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss." KRS 304.39-020(5). In the case herein, the only type or "element" of loss Appellees have experienced or claimed is that of medical expenses.

KRS 304.39-241 further states:

An insured may direct the payment of benefits among the different elements of loss, if the direction is provided in writing to the reparation obligor. *A reparation obligor shall honor the written direction of benefits provided by an insured on a prospective basis.* The insured may also explicitly direct the payment of benefits for related medical expenses already paid arising from a covered loss to reimburse:

(1) A health benefit plan as defined by KRS 304.17A-005(22);

-8-

(2) A limited health service benefit plan as defined by KRS 304.17C-010;

(3) Medicaid;

(4) Medicare; or

(5) A Medicare supplement provider.

(Emphasis added.)

The primary question in this case concerns Erie's obligations to comply with the Appellees' directions regarding payment of PIP benefits for medical expenses. Erie argues KRS 304.39-210 requires that it pay the medical care providers as the loss accrued and medical expenses were incurred. The Appellees take the position the statute permits them to reserve the right to direct payment of their PIP benefits among medical providers.

When interpreting a statute, we must construe the statute according to its plain meaning. KRS 446.080(4). To that end, we construe all non-technical words in accordance with their common meanings and all words that have acquired a peculiar meaning in the law in accord with that meaning. *Id.* General principles of statutory construction require that we must not be guided by a single word or sentence in a statute, but we must look to the statute as a whole and consider its object and policy. *County of Harlan v. Appalachian Regional Healthcare, Inc*., 85 S.W.3d 607, 611 (Ky. 2002).

In interpreting the phrases "directing the payment of benefits among the different elements of loss" and "direct the payment of benefits among the different elements of loss," Erie focuses on the word "among." Erie contends that this provision merely allows an insured to direct payment among the types of losses, such as medical expenses or lost wages, but not within a particular element of loss. In support of this argument, Erie cites to *Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mutual Insurance Company*, 250 S.W.3d 321 (Ky. 2008), which addressed the enforceability of an agreement to assign the right to PIP benefits to the medical provider. Prior to 1998, KRS 304.39-240 allowed an insured to assign rights to benefits for certain work loss and medical expenses. Our Supreme Court held that the 1998 repeal of KRS 304.39-240 and enactment of KRS 304.39-241 rendered such agreements unenforceable. 250 S.W.3d at 326-27. That Court concluded:

> The new statutory provision, KRS 304.39-241, allows the insured to direct the payment of his or her benefits among the different elements of loss if the direction is provided, in writing, to the reparation obligor. With this change in the law, the legislature recognized that it is a more efficient, economical, and equitable system to keep the provider out of the reparations process and afford the insured the control of how his or her benefits are paid because there is only a certain amount of money available for payment. If each and every medical provider obtained an assignment – as a matter of course – of any right to benefits under the MVRA, the insured's benefits could be exhausted after an accident, leaving the insured no ability to decide at a later date that he or she

-10-

> would be better served by directing reparation benefits to
> cover some other element of loss, such as economic loss.

*Neurodiagnostics*, 250 S.W.3d at 327.

Thus, the Kentucky Supreme Court has held that an agreement to assign benefits is inconsistent with the language of KRS 304.39-241, granting the insured control over how benefits are distributed. *Neurodiagnostics*, 250 S.W.3d at 327. That Court further determined that granting the insured such control furthers the stated policies and purposes behind the MVRA, which include: (1) providing prompt payment to victims of motor vehicle accidents; (2) encouraging "prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation"; (3) reducing "the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities[,] and uncertainties of the liability system"; and (4) helping "guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical[,] and equitable system of motor vehicle accident reparations[.]" *Id.* at 325-26 (citing KRS 304.39-010(2), (3), (5), and (6)). Based on the language of KRS 304.39-241 and these policy considerations, the Supreme Court held that any assignment of benefits under the MVRA is unenforceable, and that the medical provider has no direct right of action against the PIP insurer. *Id.* at 327.

-11-

Erie also cites to this Court's opinion in *Medlin v. Progressive Direct Insurance Company*, 419 S.W.3d 60 (Ky. App. 2013), which addressed the language of KRS 304.39-210(1) and 304.39-241. In *Medlin*, the insured directed his insurer to reimburse him directly for medical expenses. The insurer argued that it was only required to reimburse the insured for medical expenses already paid. *Medlin*, 419 S.W.3d at 62. This Court agreed, holding that KRS 304.39-241 merely requires an insurer either reimburse the insured for money spent out of pocket or pay the medical care providers directly. *Medlin*, 419 S.W.3d at 63-64. Consequently, the insurer was not required to reimburse the insured before medical expenses were paid. *Id.* at 64.

Neither the Supreme Court in *Neurodiagnostics* nor this Court in *Medlin* addressed the issue presented in this case – whether an insured may direct payments within a single element of loss, *i.e.*, determining the priority of payment to medical care providers. But both prior cases emphasize that the MVRA affords the insured control over how his or her benefits are paid. As noted in *Medlin*, KRS 304.39-241 only affords two options, but the insurer is bound by that choice. For example, it is clear the MVRA and *Medlin* would allow an insured to pay a claim-related medical bill and then receive reimbursement from the insurer. Had Appellees paid Hackney and Hensley Chiropractic out of pocket – and no other provider – and then submitted a request for reimbursement to Erie, it would be

obligated to reimburse that payment even though Appellees had incurred, but not

yet paid, other medical bills for services received prior to their treatment with

Hackney and Hensley Chiropractic.

Contrary to Erie's argument, KRS 304.39-241 effectively allows

insureds to direct payments within an element of loss. Upon receiving that

direction, an insurer cannot unilaterally require that PIP benefits be paid on a first-

in/first-out basis. Consequently, Erie was required to follow the Appellees'

directions to pay the claims to Hackney and Hensley Chiropractic before paying

the other medical bills.

Because Erie failed to follow those directions, and the Trial Court

found it responsible for Appellees' medical bills, the Appellees sought increased

interest and attorney's fees pursuant to KRS 304.39-210 and KRS 304.39-220.

KRS 304.39-210(2) states: "Overdue payments bear interest at the rate of twelve

percent (12%) per annum, except that if delay was without reasonable foundation

the rate of interest shall be eighteen percent (18%) per annum." KRS 304.39-220

further provides:

> (1) If overdue benefits are recovered in an action against
> the reparation obligor or paid by the reparation obligor
> after receipt of notice of the attorney's representation, a
> reasonable attorney's fee for advising and representing a
> claimant on a claim or in an action for basic or added
> reparation benefits may be awarded by the court if the
> denial or delay was without reasonable foundation. No
> part of the fee for representing the claimant in connection

with these benefits is a charge against benefits otherwise due the claimant.

(2) In any action brought against the insured by the reparation obligor, the court may award the insured's attorney a reasonable attorney's fee for defending the action.

In finding that Erie's failure to follow Appellees' directions was "without reasonable foundation," the Trial Court stated:

It is without question that the MVRA was enacted to assist the victim of motor vehicle accidents by affording them [sic] control over how Basic Reparation Benefits are to be paid. In so doing, the insurer's involvement in the victim's medical treatment is reduced. It is beyond reason that the legislature would permit the victim of a motor vehicle accident to direct the payment of their [sic] medical bills, yet not permit them [sic] to choose to whom payment should be made. Therefore, all medical bills until the January 16, 2019, direction of payment had accrued and were due and payable up to the $10,000.00 limits of the Erie policy.

Accordingly, the Trial Court found that Appellees were entitled to recover "excess interest" at the rate of 18% per annum pursuant to KRS 304.39-210(2). For the same reason, the Trial Court found that Appellees were entitled to recover their attorney fees incurred in defending the action and pursuing relief against Erie, which argues that the Trial Court erred in finding that its position was without reasonable foundation.

An award of attorney's fees under the statute is within the sound discretion of the Trial Court. *Progressive Direct Ins. Co. v. Hartson*, 661 S.W.3d

-14-

291, 304 (Ky. App. 2023). *See also Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (amended).

Erie contends the parties' opposing positions regarding an insured's ability to direct payment within an element of loss constituted a justiciable controversy and further served as its reasonable foundation for refusing to pay PIP benefits to the provider as the insureds directed. Erie further points out that this issue is a matter of first impression, which thus leaves the proper interpretation of the statute reasonably subject to debate. As a result, Erie argues that its "decision to seek a declaratory judgment on the PIP payment directive does not constitute a 'gamble taken by a reparations insurer in allowing benefits to become overdue,' or a 'dishonorable practice of accepting premiums but refusing to honor claims made by its insureds,' as alleged by [Appellees]."

In both KRS 304.39-210 and KRS 304.39-220, our General Assembly contemplated awarding attorney's fees and excess interest where denial or delay of

-15-

payment was without reasonable foundation. This Court has previously stated that "the assertion of a legitimate and bona fide defense by the reparation obligor constitutes reasonable foundation for delay under KRS 304.39-210 and KRS 304.39-220, and this is not changed by the fact that the case is ultimately decided against the obligor." *Automobile Club Insurance Company v. Lainhart*, 609 S.W.2d 692, 695 (Ky. App. 1980). But in *Lainhart*, no proof of loss was presented to the insurer until the matter was tried. *Id.* at 694.

In this case, the Appellees presented proof of loss, and Erie does not raise any objection to the medical services provided. Furthermore, Erie does not contend that the pending claims would have exceeded the $10,000.00 limits of the PIP coverage. Rather, Erie simply took the position that it was not required to follow the Appellees' payment directives, and that chiropractic medical expenses had not "accrued" until it paid the medical bills that had been previously submitted.

Erie further took the position that its obligation to pay the medical expenses never accrued until the dispute about priority was resolved. Thus, it sought to pay the balance of the PIP limit into court. As the Trial Court correctly recognized, the clear language of KRS 304.39-210(1) and 304.39-241 do not permit it to deny or delay payment by this method.

The purpose of the MVRA is to ensure prompt payment of PIP claims with minimal need to resort to court proceedings. Absent assertion of a valid defense, such as lack of documentation, a bona fide dispute whether the expense was reasonable, or exceeding the PIP limit, Erie has always been obligated to pay the chiropractic expenses. The mere assertion of a dispute about the timing or order of payments does not excuse Erie's obligations under the MVRA.

Good faith does not absolve Erie from liability for increased interest and attorney fees. All that is required to award increased interest and attorney's fees is a finding that denial or "delay was without reasonable foundation[.]" KRS 304.39-210(2); KRS 304.39-220(1). Moreover, a denial is not required to trigger these provisions; rather, only a delay without reasonable foundation must occur. In any event, Erie has effectively denied the claim, considering that it has never paid the chiropractic expenses even five years later. Although the interpretation of KRS 304.39-210(1) and 304.39-241 is a matter of first impression, we must agree with the Trial Court that Erie's position was clearly contrary to the language of the statutes and the policies behind the MVRA. Therefore, the Trial Court did not abuse its discretion in finding that Erie's actions were without reasonable foundation.

Finally, Erie contends that the Appellees stipulated that it filed the declaratory judgment in good faith. Erie contends that this stipulation amounts to a

judicial admission, precluding the Appellees from arguing that Erie's actions were without reasonable foundation. By definition, a judicial admission "is a formal act by a party in the course of a judicial proceeding which has the effect of waiving or dispensing with the necessity of producing evidence by the opponent and bars a party from disputing a proposition in question." *Nolin Production Credit Association v. Canmer Deposit Bank*, 726 S.W.2d 693, 701 (Ky. App. 1986). Judicial admissions may be disproved by other evidence and "should be sparingly administered." *Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 380 (Ky. 1992). As a result, judicial admissions should be applied only where the statements are unequivocal and must be considered to be deliberately true or false. *George M. Eady Co. v. Stevenson*, 550 S.W.2d 473, 473-74 (Ky. 1977).

As a basis for the admission, Erie relies upon Paragraph 12 of the Answer, which states, "That the answering Defendants admit the allegations in numerical paragraph 20 of Plaintiff's Complaint." Paragraph 20 of the complaint states:

> Plaintiff Erie files this Declaratory Judgment Action in good faith, seeking resolution of a justiciable controversy requiring the interpretation of Kentucky law, and in response to Defendants' unwarranted threat of a "necessary" suit to collect attorney fees and costs, in addition to PIP benefits which they demand be made solely in accordance with their directives, and in a manner contrary to Plaintiff Erie's obligations under the Kentucky [MVRA]. Under these circumstance[s], Plaintiff Erie further seeks judgment that Defendants are

-18-

not entitled to an award of attorney fees or costs incurred in the defense of this action.

As previously discussed, Erie's subjective good faith in bringing the declaratory judgment action is not controlling to its liability for increased interest and attorney fees. Furthermore, in Count I of Appellees' counterclaim, Paragraph 11 states, "The failure of . . . Erie . . . to timely [sic] pay the . . . medical expenses as directed is without a 'reasonable foundation' under the MVRA[.]" When the answer and counterclaim are read together, the Appellees clearly did not intend to admit that Erie had a reasonable foundation in delaying payment of the medical expenses. Therefore, the Appellees were not precluded from asserting their claim for increased interest and attorney fees.

Accordingly, we affirm the judgment of the Floyd Circuit Court.

GOODWINE, JUDGE, CONCURS.

CETRULO, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

CETRULO, JUDGE, CONCURRING IN PART AND DISSENTING IN PART: Respectfully, I concur in part and dissent in part. I agree with the majority and the prior panel of this Court that the purpose of the MVRA is to provide for prompt payment of medical bills and other elements of loss. I also agree that the case law interpreting the statute has emphasized the intent to afford the insured the control of how his or her benefits are paid. I find the majority opinion consistent with the

Supreme Court holding in *Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mutual Insurance Company*, 250 S.W.3d 321, 327 (Ky. 2008). However, as the majority notes, neither *Neurodiagnostics* nor this Court's opinion in *Medlin*, addressed the specific issue in this case.

In practice, where it appears that the available reparations benefits may be insufficient, plaintiffs' counsel will often assist clients in carefully deciding what to submit and what to attempt to have paid elsewhere. For instance, if an accident victim has good health insurance, or Medicare, she will often choose to submit medical bills to the health insurance carrier, reserving available no-fault benefits to pay for lost wages. This practice of "directing" payment of no-fault benefits has been specifically authorized since 2008, and the insurer is required to honor a written direction from the insured. KRS 304.39-241, when adopted, was even titled "Insured's direction of payment of benefits among elements of loss-Direction of payment to reimburse for medical expenses already paid." However, in practice, it appears that this "directing" of payments has been primarily limited to a choice between paying medical bills and work loss with the available basic reparations benefits ("BRB"). As the majority notes, Erie emphasizes and apparently relied upon the phrase "among different elements of loss" for its practice of paying medical bills first-in/first-out. No one has referred us to any

reported decision wherein the direction was made to pay one provider instead of another.

Still, Johnson and Reed had every right to direct their insurer to reserve payment, or they could have even paid the expenses themselves and directed Erie to reimburse them, according to the statute and case law. Thus, I believe our ruling permitting such a direction not only makes sense, but is in keeping with the intent of the legislation to afford the insured control of how his or her benefits are paid.

However, Johnson and Reed first reserved or directed Erie against making *any* payments of BRB which Erie honored. Later, they directed Erie to utilize their benefits and make payment of bills, not some other element of loss such as lost earnings. They directed that Erie pay their chiropractor in lieu of the hospital and other provider bills that had already been submitted to Erie for earlier in time treatment. Erie believed it was bound to make payment of medical bills "as loss accrues" pursuant to KRS 304.39-210(1). The parties reached an impasse as to the proper order of payment, and Erie instituted the declaratory judgment action seeking guidance from the Court. This was a reasonable action as Erie would certainly face penalties and attorney fees for refusing to pay in violation of KRS 304.39-241, as communicated by counsel for Johnson and Reed. Erie sought to interplead the full amount of BRB coverage into court pending a ruling as to

-21-

payment priority of these medical expenses. The trial court declined that request. As even Johnson and Reed acknowledge, this entire case deals only with questions of law and statutory interpretation.

It is apparent to me from the several amicus briefs filed before the Supreme Court in the prior appeal of this case, that *Neurodiagnostics*, *supra*, did not address the specific issue herein. Indeed, all agree that no case has done so. Thus, I would find that the "delay" in this case was due to a reasonable dispute as to the interpretation of the MVRA, and that the trial court's assessment of penalties did constitute an abuse of discretion.

As the Supreme Court stated in its Opinion and Order vacating this Court's prior decision,

> The case at bar affects potentially millions of Kentuckians, and yet is an issue of first impression in the Commonwealth. The Court may yet consider the matter in the future.

*Erie Ins. Exchange*, 647 S.W.3d at 204.

Of course, the Supreme Court did not decide the merits, finding that the appellate courts lacked subject matter jurisdiction due to finality issues. Upon remand to the trial court, the claim of attorney fees increased from $14,000.00 to over $50,000.00 due to the appeals. Again, this was assessed against Erie. The majority opinion correctly notes that awards of attorney fees are generally reviewed for an abuse of discretion, which certainly is a high standard of review.

-22-

The majority concludes that Erie's "good faith" does not absolve it from liability for increased interest and attorney fees simply because there was a delay in payment under KRS 304.39-210(2) and KRS 304.39-220(1). However, such an award still requires a specific finding that the delay was without "reasonable foundation."

When all agree that this is an issue of first impression in the Commonwealth – indeed, an issue of statutory interpretation involving questions of law that concern other carriers and other insureds – how can we then conclude that there was no "reasonable foundation" for Erie's position? Clearly, it is imperative that this Court or the Supreme Court provide guidance for insurers in the future, and that guidance should resolve the issue going forward. However, as to this case of first impression, there must be some reasonable analysis of what "without reasonable foundation" means.

The case law suggests that the "assertion of a legitimate defense" constitutes a reasonable foundation for delay even if the case is ultimately decided against an obligor. *Automobile Club Ins. Co. v. Lainhart*, 609 S.W.2d 692, 694 (Ky. App. 1980). The cases upholding attorney fees and interest arise out of an unreasonable refusal to pay proven claims. For example, in *Shelter Mutual Insurance Company v. Askew*, 701 S.W.2d 139 (Ky. App. 1985), the insurer denied a PIP claim because it unilaterally decided the amount charged was unreasonable

and the treatment was not causally related. We held that it is only if no reasonable foundation for denying payment of an overdue claim existed that 18% interest and attorney fees may be awarded. *Id.* at 141.

An insurer's "legitimate and bona fide" defense should count as a "reasonable foundation" for delaying payments. *Lainhart*, 609 S.W.2d at 695. If an insurer could reasonably conclude that the law was not clear in regard to the priority of payment, the 18% provision does not apply. *Id.* In contrast, an insurer has been held to lack a "reasonable foundation" for delay if case law clearly contradicts its position. *Ky. Farm Bureau Mut. Ins. Co. v. McQueen*, 700 S.W.2d 73, 74 (Ky. App. 1985). Here, however, there was no such case law.

What constitutes a reasonable foundation defense where there is no case law was recently addressed in a very similar federal court action that also concerned no-fault benefits.[3]

In *Irvin v. State Farm Mutual Automobile Insurance Company*, 861 F. App'x 65, 67 (6th Cir. 2021), several injured parties filed claims for benefits with their BRB carrier, State Farm. At that time, State Farm had a practice of requesting paper reviews by medical professionals to determine if treatment was reasonable and causally related. Based upon such a review, State Farm had

---

[3] We are not bound by a federal court's interpretation of state law. *Embs v. Pepsi-Cola Bottling Co.*, 528 S.W.2d 703, 705 (Ky. 1975). However, I find it persuasive in this instance.

delayed payment to its insureds. In 2018, the Kentucky Supreme Court ended paper reviews of no-fault insurance claims, holding that the MVRA prohibits insurers from denying no-fault benefits solely on that basis. *See Gov't Emps. Ins. Co. v. Sanders*, 569 S.W.3d 923, 928 (Ky. 2018). In response to the *Sanders* decision, State Farm paid the benefits to its insureds with 12% interest for the delay in payment. The insureds filed suit for an additional 6% interest and attorney fees, arguing that no reasonable foundation existed for State Farm's denial based on its paper review process now found to be prohibited. *Irvin*, 861 F. App'x at 66.

The case was removed to Federal Court, and both the District Court and the Sixth Circuit denied the request for additional interest and attorney fees. Finding that "before *Sanders*, no Kentucky appellate court had held, or suggested, that paper reviews violated state law" the *Irvin* Court concluded that State Farm's prior reliance on that practice was not unreasonable. *Id.* at 67. The Court reviewed Kentucky case law and concluded that *Sanders* broke new ground. *Id.* at 68. Thus, the Court denied the request for 18% interest and attorney fees as there was no prior appellate court decision specifically finding that State Farm's practice violated state law. *Id.*

Turning to the case at bench, there was no prior appellate court decision that specifically found that Erie's first-in\first-out practice of paying medical claims violated state law. Erie derived no benefit from this practice nor

-25-

from its denial of the direction in this instance due to its apparent practice. Neither did it receive any benefit by filing the declaratory judgment action herein, other than to seek guidance as to how to handle a direction of benefits within the medical expense loss. Erie incurred legal fees just like Johnson and Reed while this issue has worked its way through the several levels of the judiciary. I sympathize with the injured parties' intent and desire to direct payment to a provider of their choosing. Our decision today, if upheld, will permit that direction in future cases. However, conversely, I do not attribute bad faith or an unreasonable interpretation of the statute to Erie when faced with competing obligations to pay medical providers within 30 days or face penalties.

Where, as here, neither the trial court nor the majority has found bad faith to exist; and where, as here, there was clearly a question of law to be determined by the appellate courts, I believe it was an abuse of discretion to penalize the carrier for seeking clarification as to the statute's application. Accordingly, I would reverse the trial court as to the fees and interest only.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Mark A. Osbourn
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES:

Shane Hall
Pikeville, Kentucky